## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

UNUM LIFE INSURANCE )
COMPANY OF AMERICA, )
         )
   Plaintiff, )
         )
v.          )   Civil Action No. 3:22-cv-455–HEH
         )
JAMES W. COOPER, JR., *et al.*, )
         )
   Defendants. )

### <u>MEMORANDUM OPINION</u>
### (Determining Defendants' Respective Rights
### to Life Insurance Proceeds)

THIS MATTER is before the Court following the Court's Scheduling Order (ECF No. 22) directing the parties to inform the Court of their respective rights to the proceeds of Connie R. Sears' ("Sears") life insurance policy (the "Policy"). The life insurance proceeds total $40,976.51, which includes the Policy's full value plus interest. (ECF No. 20.) The interested parties who are asserting rights to the proceeds are James W. Cooper, Jr. ("Cooper"), Dennis C. Kennedy ("Kennedy"), Patrice Cibula ("Cibula"), and William L. Steele ("Steele"). The interested parties' positions are fully briefed and filed with this Court. (ECF Nos. 23, 24, 25.) The issue of who is properly entitled to the proceeds is now ripe for determination. Upon due consideration and for the following reasons, the Court finds that James W. Cooper, Jr. is properly entitled to Sears' life insurance Policy proceeds.

## BACKGROUND

On November 12, 1992, Sears completed an enrollment application seeking a $40,000 life insurance policy through her employer, Titmus Optical.[1] (Notice at 1, ECF No. 18.) The Policy was under UNUM Life Insurance Company of America's ("UNUM") management. When Sears completed the initial enrollment application, she designated her daughter, Patricia Cibula, who was previously named "Patricia C. Call," as the primary beneficiary. (*Id.* at 2.) On July 3, 2019, Sears filed a signed beneficiary designation form, used by UNUM to designate new primary beneficiaries under the Policy. (*Id.*) On the new form, she assigned all Policy proceeds to "Kenneth K. Tomko," whose relationship was listed as "Friend."[2] (*Id.* at 4.) On August 21, 2020, Sears filed another signed beneficiary designation form assigning all Policy proceeds to "James W Cooper Jr.," whose relationship was listed as "caretaker." (*Id.* at 5.) "Dennis Kennedy" was listed as the contingent beneficiary, whose relationship was left blank. (*Id.*) On December 30, 2020, Sears filed another signed beneficiary designation form again listing "James W Cooper Jr." as the primary beneficiary and "caretaker," and "Dennis C. Kennedy" as the contingent beneficiary. (*Id.* at 6.) In the updated form, Kennedy's relationship was listed as "friend/VFW 637 Commander." (*Id.*) Sears did not send any other signed beneficiary designation forms to UNUM.

---

[1] On that date, Sears' last name was Call, so the enrollment application was signed as "Connie R. Call."

[2] "Jonathan Donivan" was listed as the contingent beneficiary, whose relationship was also listed as "Friend."

### Defendants William L. Steele and Patricia Cibula

Steele and Cibula (collectively, the "Children") are Sears' children. They assert that Sears intended to change the primary beneficiary under the Policy to Steele on September 20, 2021. (Cibula's Resp. at ¶ a, ECF No. 24; Steele's Resp. at ¶ a, ECF No. 25.) As part of their response briefs, the Children attached a notice UNUM provided Sears on September 20, 2021, which stated in relevant part:

> "We appreciate your interest in the UNUM Voluntary Group Universal Life plan. Enclosed are the form(s) you requested:
>
> Beneficiary Change Form
>
> Please complete the necessary information and return it to our office in the envelope provided."

(Attachment #1 at 1, ECF No. 25-1.)[3] As far as the Court is aware, a request for a beneficiary change form was made, but no new signed beneficiary change form was ever submitted to UNUM designating a new primary beneficiary under the Policy after September 20, 2021.

In addition to their claim that Sears intended to change the Policy's primary beneficiary, the Children also reference Sears' long history with depression and mental health issues. (Cibula's Resp. at ¶¶ e–g; Steele's Resp. at ¶¶ g–i.) In identical terms, the Children state that "[Sears] struggled with depression and mental health issues her entire life" and "[a]s early as 17 years old she was committed to Eastern State Mental Hospital." (*Id.*) They also allege that Sears refused mental health treatments for fear that receiving

---

[3] Both Steele and Cibula attached the exact same notice document from UNUM, so the Court cites only the attachment under Steele's Response to Order.

treatment "would result in [an] adverse outcome for her." (Cibula's Resp. at ¶ f; Steele's Resp. at ¶ h.)  Sears allegedly "sunk into a deep depression upon the passing of her husband." (Cibula's Resp. at ¶ g; Steele's Resp. at ¶ i.)

The Children also assert that Cooper and Kennedy were not "caretakers" or substantially involved in Sears' life but were merely "acquaintances," who through the Veterans of Foreign Wars ("VFW"), helped Sears arrange for her husband's burial upon his passing.  (Cibula's Resp. at ¶ 3; Steele's Resp. at ¶ 3.)  Sears allegedly told the Children that "[Cooper] said 'she should sign everything over so her children didn't swoop in at the end and take everything.'"  (Steele's Resp. at ¶ f.)  The Children allege that Cooper and Kennedy were not substantially involved in Sears' life and were leveraging Sears' "depression after the passing of her husband in an effort to gain access to her resources.  They were both just acquaintances that held a significant role in the VFW." (Steele's Resp. at ¶ 3.)

## Defendants Cooper and Kennedy[4]

In Cooper's Response to the Court's Order, he states that upon Sears' husband's death, Sears contacted VFW Post 637 to assist her with her husband's burial arrangements, "which included escorting her to Arlington National Cemetery." (Cooper Resp. at 1.)  Allegedly, during the three-hour car ride to Arlington, Sears "became very emotional as she explained why her kids were not there for her and their father during this difficult time." (*Id.*)  At that time, Cooper and Kennedy, the Commander of VFW

---

[4] Kennedy never formally filed a response with this Court.  The extent of Kennedy's involvement with Sears comes directly from the facts alleged in Cooper's Response to Order (ECF No. 23).

Post 637, made a promise to Sears to assist and take care of her. (*Id.*) Cooper alleges that "[o]ver the next few weeks[,] we began to earn her total trust to the point that [Sears] asked [Cooper] to serve as her caretaker." (*Id.*) Cooper further states, "[t]his included taking her to medical appointments if she didn't feel like driving herself or needed a required driver, cutting her grass, bringing her meals, and taking care of her vehicle maintenance." (*Id.*) After a few months, Sears allegedly spoke with Cooper about being "executor of her estate with a conditional power of attorney [and] a will, which included her house and two vehicles and her life insurance policy with Unum." (*Id.*) However, Sears never had the will or final documents notarized or recorded, and the Policy was the only document which was completed "because it didn't require a notary." (*Id.*) Cooper alleges Sears' reasoning for making Cooper and Kennedy the Policy beneficiaries was that "she knew the [VFW] leadership was elected annually" so she trusted Cooper and Kennedy "to do the right thing[,] which [was] give the money to the VFW." (*Id.*)

## ANALYSIS

The Policy here was issued pursuant to a plan of employee welfare benefits organized and maintained pursuant to the Employee Retirement Income Security Act ("ERISA") 28 U.S.C. § 1001, *et seq.* ERISA regulates employee welfare benefit plans which provide life insurance policies. 29 U.S.C. § 1002(1)(A). Section 1144(a) of ERISA provides that federal law shall supersede all state laws which "relate to" an ERISA plan. 29 U.S.C. § 1144(a). Courts must therefore look to the statutory language first, and if no answer is found there, courts look to the federal common law. *Pilot Life Ins. Co. v. Dedaux*, 481 U.S. 41, 45 (1987). If federal common law is not clear, courts

5

may then draw guidance from analogous state law. *Id.* Additionally, ERISA obligates administrators to manage ERISA plans "in accordance with the documents and instruments governing" them. 29 U.S.C. § 1104(a)(1)(D). If there is a designation on file that controls, administrators and courts need look no further than the plan documents to determine the beneficiary, thus avoiding protracted litigation. *Fox Valley & Vicinity Constr. Workers Pension Fund v. Brown*, 897 F.2d 275, 283 (7th Cir. 1990).

Here, the interested parties have not asserted that any state law should control the issue, and as such, ERISA makes clear that administrators and courts should manage the plans according to the controlling documents. Over the years, Sears made multiple changes as to who was the primary beneficiary under the plan, so she clearly knew that there was a specific beneficiary designation form that needed to be completed and signed before a new primary beneficiary could be established. Although the Children argue that Sears intended to change the primary beneficiary to Steele, as evidenced by her request for a new beneficiary designation form from UNUM, she never actually submitted a completed and signed form. However, without additional proof, it is not Sears' purported intent to change the beneficiary that controls, but the completed designation form that actually changes it. "Rules requiring payments to the named beneficiary yield simple administration, avoid double liability, and ensure that beneficiaries get what's coming to them without the folderol essential under less-certain rules." *Fox Valley*, 897 F.2d at 283.

The Children allege that Cooper and Kennedy had ill motives and that they were simply taking advantage of Sears during a difficult time. However, the Children have failed to demonstrate any real proof of unlawful conduct beyond blanket assertions.

6

Simply stating that Cooper and Kennedy were "leveraging" Sears' depression "in an effort to gain access to her resources" is not enough to show that the beneficiary designation forms were fraudulently procured. (Steele's Resp. at ¶ 3.) Sears signed and filed two different beneficiary designation forms with UNUM, one in August and December of 2020, each listing Cooper and Kennedy as Policy beneficiaries. This runs contrary to the assertion that Cooper and Kennedy coercively pressured Sears to file this beneficiary designation form immediately after her husband's passing.

Lastly, the Children allege that Sears "struggled with depression and mental health issues her entire life," and this depression worsened upon her husband's passing. (Cibula's Resp. at ¶¶ e–g ; Steele's Resp. at ¶¶ e–g.) Although the Court does not dispute Sears' possible mental health issues, the Children do not demonstrate that these mental health issues were of such a degree as to render her legally incapacitated or unable to handle her affairs. Sears having depression or mental health issues alone does not legally negate the properly submitted beneficiary designation forms, which clearly names James W. Cooper, Jr. as the primary beneficiary.

Therefore, because the Children failed to submit any real proof of fraudulent conduct or assert that the beneficiary designation forms were unlawfully submitted, the Court finds that James W. Cooper, Jr. is the proper recipient of Sears' Policy proceeds. As the signed December 2020 beneficiary designation form states, James W. Cooper, Jr. is the Policy's named primary beneficiary and is entitled to a 100% share of the proceeds. (ECF No. 18 at 6.)

7

## CONCLUSION

For the foregoing reasons, the Court finds that James W. Cooper, Jr. has sole respective rights to the Policy's full value of $40,976.51.  A separate Order will accompany this Memorandum Opinion directing the Court's payment of the proceeds to James W. Cooper, Jr.

/s/
_____
Henry E. Hudson
Senior United States District Judge

Date: Dec. 22, 2022
Richmond, VA